UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRETT STRINGER,

     Plaintiff,

v.                               Case No:  2:15-cv-316-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

This cause is before the Court on Plaintiff Brett Stringer's Complaint (Doc. 1) filed on May 22, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**       **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A.**       **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On November 17, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits asserting an onset date of December 1, 2009. (Tr. at 86, 189-90). Plaintiff's application was denied initially on February 2, 2012, and on reconsideration on April 23, 2012. (Tr. at 86, 100). A hearing was held before Administrative Law Judge ("ALJ") Linda Gail Roberts on June 7, 2013. (Tr. at 36-69). The ALJ issued an unfavorable decision on July 31, 2013. (Tr. at 15-29). The ALJ found Plaintiff not to be under a disability from December 1, 2009, through the date of the decision. (Tr. at 28).

On March 19, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 22, 2015. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 19).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2014.  (Tr. at 17).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2009, the alleged onset date.  (Tr. at 17).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus; hypertension; congenital stenosis of the lumbar spine; anterolisthesis of the cervical spine; obesity; anxiety disorder; and obsessive-compulsive disorder.  (Tr. at 17).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 17).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with limitations.

> Specifically, the claimant is able to occasionally lift and/or carry, including upward pulling, up to fifty pounds; he can frequently lift and/or carry, including upward pulling, up to twenty-five pounds; he can stand and walk for about six hours in an eight-hour day; he can sit with normal breaks for a total of about six hours in an eight-hour day; pushing and pulling, including overhead operation of hand and foot controls is unlimited, unless specifically noted; he does have postural limitations, as to climbing ramps and stairs he is unlimited, but he can never climb ladders, ropes, or scaffolds; he can perform unlimited balancing; he can frequently [sic] stooping, kneel, crouching, and crawling; he can reach, in any direction, including overhead, but is limited with the right upper extremity with lifting to the front or

laterally; he can perform unlimited handling, fingering, and feeling; he has no visual, communicative, or environmental limitations; the claimant can understand, retain, and carry out simple instructions; he can consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision; he can cooperate effectively with public and coworkers in completing simple tasks and transactions; and he can adjust to the mental demands of most new task settings.

(Tr. at 20).  The ALJ determined that Plaintiff was not capable of performing his past relevant work.  (Tr. at 27).  After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 28).  The ALJ considered the vocational expert's testimony that Plaintiff was able to perform the jobs of laundry laborer (DOT # 361.687-018); hand packer (DOT # 920.587-018); and box bender (DOT # 641.687-010).[2]  (Tr. at 28).  The ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (Tr. at 28).  The ALJ concluded that Plaintiff was not under a disability from December 1, 2009, through the date of the decision.  (Tr. at 28-29).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[2]  "DOT" refers to the *Dictionary of Occupational Titles*.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that a court must scrutinize the entire record to determine reasonableness of factual findings).

## II.    Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff, they are:

1) Whether the testimony of the vocational expert provides substantial evidence to support the Administrative Law Judge's finding that Plaintiff could perform other work.

2) Whether substantial evidence supports the Administrative Law Judge's determination that Plaintiff's allegations of disabling limitations were not entirely credible.

(Doc. 28 at 1). The Court addresses each issue in turn below

### A.  Hypothetical and Vocational Expert's Testimony

When posing the hypothetical to the vocational expert, the ALJ included certain limitations. (Tr. at 64). Plaintiff sets forth three arguments concerning the limitation that Plaintiff "can reach, in any direction, including overhead, but is limited with the right upper extremity with lifting to the front or laterally." (Tr. at 20). First, Plaintiff argues that this limitation as presented in the hypothetical question posed to the vocational expert was

insufficient because the ALJ failed to state the extent of the limitation – *i.e.*, whether the individual was limited to frequent or occasional reaching, or was unable to reach overhead, in front and/or laterally at all.  Second, Plaintiff asserts that two of the jobs listed by the vocational expert require constant reaching and one of these jobs requires frequent reaching, as described in the *Dictionary of Occupational Titles*.  Third, Plaintiff asserts the above limitation in the hypothetical is different from the ALJ's RFC finding in her decision.

The Commissioner contends that the ALJ asked the vocational expert whether his testimony conflicted with the *Dictionary of Occupational Titles*, and the vocational expert testified that it did not.  Thus, the Commissioner argues that the ALJ was permitted to rely of the vocational expert's testimony, and the ALJ fulfilled her responsibility.  The Commissioner also asserts that the difference in language between the hypothetical and the RFC is "merely semantics" and in both, the ALJ indicated that Plaintiff had limitations in his right upper extremity in the front and laterally.  Moreover, after listening to the hypothetical, the Commissioner asserts that the vocational expert had no difficulty in identifying jobs Plaintiff was able to perform.

"The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform.  *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all

of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).  However, an ALJ is not required to "include the findings in the hypothetical that the ALJ has found to be unsupported.  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

### 1.   Difference in Language Between RFC and Hypothetical

The hypothetical posed to the vocational expert included an individual who was limited on the right upper extremity for "reaching" in front and laterally, whereas the language in the RFC limited Plaintiff on the right upper extremity for "lifting" in front and laterally.  The issue is whether the ALJ erred in using the term "lifting" in the RFC while using the term "reaching" in the hypothetical to the vocational expert.  Looking to the common meanings of the terms "lifting" and "reaching," the Court finds that *reaching* would necessarily include a limitation for *lifting* because a person who is limited in reaching in certain directions would also be limited in lifting in those same directions.  Thus, the language of the hypothetical posed to the vocational expert was more restrictive than the RFC.  Moreover, a hypothetical question accounts for a plaintiff's limitation when the hypothetical otherwise implicitly accounts for that limitation.  *See Kinnard v. Comm'r of Soc. Sec.*, 426 F. App'x 835, 837 (11th Cir. 2011) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).  A limitation in reaching in the right upper extremity implicitly accounts for a limitation in lifting because if one cannot reach in a particular direction, one would also not be able to lift in that same direction.  Even with the more restrictive hypothetical, the vocational expert found Plaintiff able to perform the jobs of laundry laborer, hand packer, and box bender.  Accordingly, the Court finds that if the ALJ erred in using different language in the RFC and the hypothetical posed to the vocational expert, the

error was harmless and does not warrant remand.  *See Pichette v. Barnhart*, 185 F. App'x 855,

856 (11th Cir. 2006) (remand not warranted when ALJ commits harmless error).

### 2.  Extent of Limitations

Plaintiff argues that the ALJ erred in failing to specify the extent of the limitation in the

right upper extremity in the hypothetical to the vocational expert.  In Plaintiff's RFC, the ALJ

found Plaintiff to be limited with his right upper extremity with lifting to the front or laterally.

(Tr. at 20).  The ALJ included a more restrictive limitation when posing a hypothetical to the

vocational expert, namely, "[l]et's see, as to reaching any direction including overhead, he is

limited right in the front and/or lateral."  (Tr. at 64).

An ALJ must pose a hypothetical question that "adequately describes all of the claimant's

impairments."  *Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006).  The Court

determines that the hypothetical question to the vocational expert did adequately describe the

limitation as to reaching with the right upper extremity, and the hypothetical was complete as

posed.  The vocational expert did not request clarification as to the limitations in the hypothetical

question, but was able to determine jobs that Plaintiff was able to perform (using the more

restrictive term "reaching" rather than "lifting").  Based on the hypothetical question, the

vocational expert testified that this individual could not return to Plaintiff's past relevant work,

but was able to perform the jobs of laundry laborer, hand packer, and box bender.  (Tr. at 65).

The Court finds that the ALJ did not err in the hypothetical posed to the vocational expert.

### 3.  Jobs

Plaintiff argues that two of the jobs listed by the vocational expert require constant

reaching and one job is limited to frequent reaching.  Based on these reaching requirements,

Plaintiff argues that the ALJ was required to ask the vocational expert to explain why someone

that was limited in reaching in front and laterally with the right upper extremity would be able to perform these jobs. Prior to the promulgation of SSR 00-04p, in *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999), the Eleventh Circuit considered the issue of a conflict between the testimony of a vocational expert and the definitions in the DOT. In *Jones*, the Eleventh Circuit held that when the vocational expert's testimony conflicts with the DOT, then the vocational expert's testimony "trumps" the DOT. *Id*. at 1230. The Court reasoned that the DOT is not comprehensive and provides occupational information on jobs in the national economy "and it instructs 'DOT users demanding specific job requirements [to] supplement th[e] data with local information detailing jobs within their community.'" *Id*. (citing *Dictionary of Occupational Titles*, Special Notice at xiii (4th ed. 1991) (other citations omitted)). A method of supplementing the DOT is by obtaining the testimony of a vocational expert. *Jones*, 190 F.3d at 1230.

SSR 00-4p was enacted to clarify the standards for use of a vocational expert at a hearing, and requires administrative law judges to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles* (DOT)." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id*.  Social Security Rulings "are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted].  Even though the rulings are not binding on [the court], we should nonetheless accord the rulings great respect and deference."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010).  Even though SSR 00-4p was promulgated after *Jones*, the Court has not found any Eleventh Circuit decisions that have overturned *Jones*.

In this case, the ALJ specifically asked the vocational expert, "does the evidence that you provided conflict with the Dictionary of Occupational Titles?"  (Tr. at 66-67).  The vocational expert responded, "[n]o."  (Tr. at 67).  Plaintiff did not offer evidence controverting the vocational expert's opinion or object to that testimony during the hearing.  *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (holding that when ALJ asks if there are any inconsistencies between the vocational expert's testimony and the DOT, and vocational expert responds no, then absent an objection or plaintiff offering evidence controverting the vocational expert's testimony, the ALJ does not err in relying on the vocational expert's testimony, even if a conflict exists).   Plaintiff asserts that the ALJ must go beyond this answer, and require the vocational expert to explain "why his opinion was at a variance with the information contained in the Selected Characteristics of Occupations (assuming the vocational expert would have identified the jobs he enumerated)."  (Doc. 27 at 7).  Neither *Jones*, *supra*, nor SSR 00-4P require an ALJ to go beyond the inquiry of asking the vocational expert if there is a conflict.

In this case, the vocational expert indicated there was no conflict between the DOT and the vocational expert's testimony.  Plaintiff did not object or present evidence controverting the vocational expert's testimony.  The ALJ relied on the statement by the vocational expert to determine that Plaintiff was able to perform the jobs listed by the vocational expert.  The ALJ

had no duty to investigate any conflict with the DOT beyond asking the vocational expert whether a conflict existed.  The Court finds that the ALJ did not err in the hypothetical presented to the vocational expert and in determining that Plaintiff was able to perform certain jobs.  The ALJ's determination that Plaintiff is able to perform the jobs of laundry laborer, hand packer, and box bender is supported by substantial evidence.

### B.  Migraine Headaches

Plaintiff argues that the ALJ did not adequately analyze Plaintiff's complaints regarding migraine headaches.  Plaintiff claims that the ALJ's summary of Plaintiff's testimony mischaracterizes Plaintiff's testimony as it relates to migraine headaches.  The Commissioner responds that the ALJ properly considered Plaintiff's subjective complaints concerning his migraine headaches.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.  *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so.  [citations omitted].  Failure to articulate the reasons for discrediting

subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

On February 6, 2013, F. Desmond Hussey. M.D., started Plaintiff on Topamax to prevent headaches. (Tr. at 356). Plaintiff testified that his migraine headaches were a bit better with Topamax and they were reduced in number and severity. (Tr. at 57-58). On April 1, 2013, Dr. Hussey reported that Plaintiff's headaches were improving on Topamax. (Tr. at 409). Additionally, Plaintiff testified that he takes Zomig when he has a migraine headache. (Tr. at 58). Plaintiff testified that he has two to three migraine headaches per month and they last approximately five to six hours. (Tr. at 58). When he has a migraine headache, Plaintiff takes medication and then sleeps. (Tr. at 58).

The ALJ cited to Plaintiff's testimony that Plaintiff was taking Topamax, which had reduced the frequency and severity of his migraine headaches. (Tr. at 21). The ALJ reviewed Plaintiff's testimony concerning taking Zomig, and noted that it had helped to alleviate the symptoms of the two to three migraines that Plaintiff experienced each month. (Tr. at 21). The ALJ did not find Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be entirely credible. (Tr. at 21).

The ALJ also cited to Dr. Hussey's records.  (Tr. at 23).  The ALJ considered Dr. Hussey's notes that Plaintiff's temporal headaches were associated with his mechanical neck pain and the headaches were not helped with the trial pain medication.  (Tr. at 23).  The ALJ noted that Dr. Hussey determined that Plaintiff's headaches improved with the addition of Topamax as a preventative medication, and that in April 2013, Plaintiff reported that his pain had been no more than moderate.  (Tr. at 23).  The ALJ afforded little weight to Dr. Hussey's opinion that Plaintiff would not be capable of gainful employment due to his affective disorder and his chronic spinal disorder.  (Tr. at 26).  The ALJ explained that the decision as to whether Plaintiff is disabled is reserved to the Commissioner.  (Tr. at 26).  Moreover, Dr. Hussey based his opinion, at least in part, on Plaintiff's mental health complaints.  (Tr. at 26).  The ALJ found that Dr. Hussey did not treat Plaintiff for his mental health condition and, thus, gave Dr. Hussey's opinion little weight.  (Tr. at 26).

The ALJ thoroughly considered all of the Plaintiff's complaints and all of the medical evidence concerning his migraine headaches.  The ALJ considered Dr. Hussey's treatment notes and his opinion as well as Plaintiff's testimony concerning his migraine headaches.  Overall, the ALJ found Plaintiff not entirely credible concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms.  The ALJ did not accept the intensity of Plaintiff's subjective complaints concerning his migraine headaches based on Plaintiff testifying and Dr. Hussey confirming that Plaintiff's condition improved with the medications, Topamax and Zomig.  The ALJ articulated specific reasons why he did not find the intensity, persistence, and limiting effects of Plaintiff's symptoms to be entirely credible.  The Court finds that the decision of the ALJ concerning Plaintiff's migraine headaches is supported by substantial evidence.

III.     **Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 16, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties